IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

TAURUS BERNARD DICKERSON,    :
:
    Plaintiff,    :
:
    V.    :
:                    NO. 5:25-cv-00054-MTT-CHW
DEPUTY WARDEN STANFORD,    :
*et al.*,    :
:
    Defendants.    :
:
_____    :

## ORDER & RECOMMENDATION

Plaintiff Taurus Bernard Dickerson, a prisoner in Macon State Prison in Oglethorpe, Georgia, filed a document in this Court that was docketed as a civil rights complaint under 42 U.S.C. § 1983. ECF No. 1. He also moved for leave to proceed in this action *in forma pauperis*. ECF No. 2. Thereafter, Plaintiff was ordered to recast his complaint on the proper form. ECF No. 4 at 1-2. Additionally, his motion to proceed *in forma pauperis* was denied because the documentation Plaintiff submitted in support of his motion showed that he had the ability to prepay the full filing fee. *Id.* at 2-3. Thus, Plaintiff was ordered to pay the $405.00 filing fee if he wanted to proceed with this case. *Id.* Plaintiff then filed a recast complaint and a new motion to proceed *in forma pauperis*. ECF Nos. 11 & 12. Plaintiff's new motion to proceed *in forma pauperis* was also denied, and he was again ordered to pay the $405.00 filing fee. ECF No. 13. Plaintiff has now paid the full filing fee, and his complaint is ripe for preliminary review.

On review of the complaint, Plaintiff will be permitted to proceed for further factual development on a deliberate indifference to safety claim against Defendants Deputy Warden Stanford and Sergeant Redd and a retaliation claim against Deputy Warden Stanford. It is **RECOMMENDED** that his remaining claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim, as set forth below.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I.    <u>Standard of Review</u>

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a).  When conducting preliminary screening, "[*p*]*ro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'"  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted).  The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."  *Id.* (citation omitted).  A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial

process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

3

II.    <u>Factual Allegations</u>

In his recast complaint, Plaintiff asserts that he arrived at Hancock State Prison in March 2024.   ECF No. 11 at 5.   At that time, Plaintiff told Defendant Deputy Warden of Security Stanford that he had "a situation with other inmates."   *Id.*   Stanford took Plaintiff into his office and began asking Plaintiff questions.   *Id.*   In particular, Stanford asked Plaintiff what DOAS meant, and Plaintiff told him that it referred to the Department of Administrative Affairs.   *Id.*   Stanford then asked if that meant that Plaintiff had filed a lawsuit "on us," and Plaintiff confirmed that he had.   *Id.*   Within an hour, Plaintiff was taken to Washington State Prison, where he was housed for three or four days before being returned to Hancock State Prison.   *Id.*

Two weeks after returning to Hancock, Plaintiff began experiencing flu-like symptoms including headaches, diarrhea, vomiting, and dizziness.   *Id.*   Plaintiff told Officer Darinsaw[1] and was taken for a sick call.   *Id.*   In medical, the provider told Plaintiff that it sounded like Plaintiff had food poisoning and gave Plaintiff Zofran and other medications, but Plaintiff's symptoms did not go away.   *Id.* at 5-6.

Around July 4, 2024, Plaintiff and his cellmate got into a fight involving weapons. *Id.* at 6.   Officer Darinsaw saw the fight and called for help on the radio.   *Id.*   Deputy Warden Stanford and Sergeant Redd responded to the call.   *Id.*   On arrival, they told Plaintiff and his cellmate to throw their knives under the door and threatened to use the

---

[1]Plaintiff indicates that this officer's name is misspelled.   ECF No. 11 at 5.

taser on them. *Id.*  Someone told Stanford that Plaintiff and his cellmate fought every week. *Id.*  Stanford approached Plaintiff's cell and said, "we already know about him," before telling Plaintiff, "you ain't going anywhere." *Id.*  Plaintiff contends that leaving him in the cell with the same cellmate later resulted in Plaintiff's left eye being "popped out" causing him permanent blindness in that eye. *Id.*  He also says that he was already legally blind in his right eye.[2]  *Id.*

When Plaintiff returned to Hancock from the Augusta State Prison Hospital, Deputy Warden Stanford was present when a lieutenant asked Plaintiff if they had saved his eye. *Id.*  Plaintiff said that they had not and that he was blind in both eyes now. *Id.*  Stanford said that was good because "we work hard for our money."  *Id.*  Stanford then told CERT Officer Walker to return Plaintiff to the same building where he had been housed before he went to the hospital. *Id.*

Plaintiff asserts that although he did not know it at the time, staff members had spread a rumor that he was a pedophile, which set him up to get beat up again in another cell. *Id.*  In this fight, Plaintiff's ribs were bruised and his right eye was swollen shut. *Id.*  Plaintiff tried to tell Officer Walker about his situation, but she refused to listen to him. *Id.* at 7.  Plaintiff then spoke to Unit Manager Robertson who put Plaintiff into an observation cell until he was transferred. *Id.*

---

[2]Plaintiff includes a note referring to his original complaint "for full detail."  ECF No. 11 at 6.  In the order to recast, Plaintiff was informed that the recast complaint would replace the original complaint and that the Court would only consider the factual allegations set forth in the recast complaint.  ECF No. 4 at 2.  Nevertheless, the Court has reviewed the original complaint and finds that it does not change the recommendations set forth herein.

III.    <u>Plaintiff's Claims</u>

A.    <u>Deliberate Indifference to Safety</u>

Plaintiff's allegations implicate a potential claim for deliberate indifference to safety.    Jail and prison officials have a duty to protect inmates from violence at the hands of other inmates.    *Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020).    But not every instance of violence between inmates "translates into constitutional liability for prison officials responsible for the victim's safety."    *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).    Rather, it is only "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment."    *Id.* at 828.    To state a claim for deliberate indifference to an inmate's safety, a prisoner must allege facts to show: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and (3) causation.    *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016); *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard."    *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal citation omitted).    To prevail, the prisoner must show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety."    *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane*, 835 F.3d at 1307).    He can make this showing by demonstrating either a "general threat" to inmates based on dangerous conditions in the prison or an individualized risk based on a "specific threat" to the prisoner.    *Id.* at 1233, 1235.

6

To establish deliberate indifference a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc) (quoting *Farmer*, 511 U.S. at 839). The first prong—subjective awareness—requires "that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837). "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995) (quoting *Farmer*, 511 U.S. at 842). For example, the evidence may show "that the risk was obvious." *Id.* (quoting *Farmer*, 511 U.S. at 842).

The second prong—disregard of the risk—is objective and the facts must show that the defendant responded to the known risk in an objectively unreasonable manner. *Marbury*, 936 F.3d at 1233 (citation omitted). The third prong—subjective recklessness—is satisfied only if the plaintiff shows "that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1253. Even when a defendant has subjective knowledge of a serious risk, "a defendant who 'responds reasonably' to [such] a risk . . . 'cannot be found liable' under the Eighth Amendment." *Id.* at 1255 (quoting *Farmer*, 511 U.S. at 845).

"Each individual [d]efendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Finally, to establish causation, "the plaintiff must show a 'necessary causal link' between the officer's failure to act reasonably and the plaintiff's injury. *Marbury*, 936 F.3d at 1233 (citation omitted). This inquiry focuses "on whether an official's acts or omissions were the cause—not merely a contributing factor—of the constitutionally infirm condition." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993).

1.    <u>Deputy Warden Stanford and Sergeant Redd</u>

Plaintiff's allegations suggest that there was a dangerous situation, in that he and his cellmate physically fought on a regular basis, sometimes with weapons involved. Deputy Warden Stanford and Sergeant Redd observed Plaintiff fighting with his cellmate, and Officer Darinsaw told them that Plaintiff and his cellmate fight every week. Despite this knowledge, Stanford and Redd had Plaintiff returned to the same cell with the same cellmate after seeing them fight. Although Plaintiff does not specifically describe what happened, he asserts that he later lost an eye after being returned to that cell. Reading Plaintiff's allegations broadly, it is reasonable to infer that Plaintiff and his cellmate fought again, causing Plaintiff to lose his eye. These allegations are sufficient to allow Plaintiff to proceed on a deliberate indifference to safety claim against Deputy Warden Stanford and Sergeant Redd.

2.    <u>Deputy Warden Stanford and Officer Walker</u>

Plaintiff also alleges that after returning from the hospital when his eye was injured, Deputy Warden Stanford directed Officer Walker to return Plaintiff to the dorm.    Plaintiff contends that he was set up to be assaulted in that dorm because prison staff had spread a rumor that Plaintiff was a pedophile.    In the dorm, Plaintiff was beaten up.    He tried to report the situation to Officer Walker, but she refused to listen.    Plaintiff then told another staff member who moved Plaintiff until he could be transferred.

On this count, Plaintiff arguably alleges a dangerous situation, insofar as he says that there was a rumor that he was a pedophile, which caused him to be beaten by other inmates.    Plaintiff says only that this rumor was spread by staff members.    He does not allege facts showing that either Deputy Warden Stanford or Officer Walker was aware of the rumor or the danger that Plaintiff would be beaten up on his return to the dorm. Therefore, he has not alleged facts showing that they were deliberately indifferent in this regard.    Moreover, Plaintiff's allegation that Officer Walker refused to listen when he tried to report being beaten up does not state a constitutional claim for relief.    It is therefore **RECOMMENDED** that this claim be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

B.    <u>Retaliation</u>

Plaintiff's allegations as to Deputy Warden Stanford also implicate a potential retaliation claim.   "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech."  *Farrow v. West*, 320 F.3d 1235, 1248

9

(11th Cir. 2003). To state a claim for retaliation, a prisoner litigant must allege facts showing that (1) he engaged in constitutionally protected speech, (2) he suffered an adverse action likely to "deter a person of ordinary firmness from engaging in such speech," and (3) there was a causal relationship between the speech and the retaliatory action. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Although he does not specify who was involved, Plaintiff's allegations suggest that he had previously filed a lawsuit against prison officials. When Deputy Warden Stanford learned of the lawsuit, he asked Plaintiff about filing a lawsuit "on us." ECF No. 11 at 5. Later, when Stanford was told that Plaintiff and his cellmate fought on a regular basis, he made comments that he "knew about" Plaintiff before saying that Plaintiff would not be moved. *Id.* at 6. When Plaintiff returned from the hospital, Stanford made another comment alluding to Plaintiff having filed a lawsuit against prison staff.

Reading these allegations in Plaintiff's favor, it appears that he is alleging that, aware of Plaintiff having filed a lawsuit, Deputy Warden Stanford decided to leave Plaintiff in a dangerous situation, causing Plaintiff to be injured in a fight with his cellmate. At this preliminary stage of this case, Plaintiff's allegations are sufficient to allow him to proceed on a retaliation case against Deputy Warden Stanford.

C.    WellPath Medical Service

Finally, Plaintiff names WellPath Medical Service as a defendant to this case. As an initial matter, it does not appear that WellPath is properly joined as a defendant in this case. Rule 20(a)(2) of the Federal Rules of Civil Procedure permits joinder of defendants

only when the right to relief asserted arises "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."

Plaintiff's claim as to WellPath appears to be related to untreated symptoms. Nothing in Plaintiff's complaint suggests that these symptoms are part of the same transaction or occurrence as the alleged deliberate indifference to safety discussed above. Even if they were, Plaintiff has not stated a claim for relief.

In order to state a claim for deliberate indifference to a serious medical need, a prisoner must allege facts to show both that he had a medical need that was objectively serious and that the defendant was deliberately indifferent to that need.  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  Plaintiff alleges that he had flu-like symptoms. He was seen in sick call where he was told it sounded like he had food poisoning and given medicine.  Although Plaintiff asserts that his symptoms persisted, he does not allege any facts to show that any particular person was aware of these continuing symptoms and disregarded a risk to Plaintiff's health.

Moreover, to state a claim against a prison's medical services contractor, a prisoner must allege facts showing that the contractor had a custom or policy that caused the constitutional violation at issue.  *Massey v. Montgomery Cty. Detention Facility*, 646 F. App'x 777, 780 (11th Cir. 2016) (per curiam) (citing *Monell v Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).  Plaintiff's allegations do not show any such custom or policy as to Wellpath.  For all of these reasons, it is **RECOMMENDED** that Plaintiff's claim as to

WellPath Medical Service be **DISMISSED WITHOUT PREJUDICE**.

IV.    <u>Conclusion</u>

For the foregoing reasons, Plaintiff's claims that Defendants Deputy Warden Stanford and Sergeant Redd were deliberately indifferent to Plaintiff's safety and that Deputy Warden Stanford retaliated against Plaintiff shall proceed for further factual development.  It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice**.  The Clerk is **DIRECTED** to provide Plaintiff with a Rule 4 Service Package.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Order and Recommendation.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Because Plaintiff is not proceeding *in forma pauperis* in this case, and the Court has found that Plaintiff made colorable constitutional violation claims against Defendants

12

Deputy Warden Stanford and Sergeant Redd, it is **ORDERED** that Plaintiff serve these Defendants and that they file an Answer, or such other response as may be appropriate under Federal Rule or Civil Procedure 12, 28 U.S.C. § 1915, and the PLRA.   Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Federal Rule of Civil Procedure 4(d).

Plaintiff must secure service upon the Defendants in accordance with the provisions of Federal Rule of Civil Procedure 4.   The Court is providing Plaintiff with a Rule 4 Service Package, which contains instructions, the necessary forms to use for waiver of service, and a copy of Federal Rule Civil Procedure 4.   While Plaintiff may request a waiver of service of summons from Defendants in accordance with Federal Rule of Civil Procedure 4(d), if Defendants do not waive service, Plaintiff must arrange for service by a person authorized to make service under Federal Rule of Civil Procedure 4(c).   In accordance with Federal Rule of Civil Procedure 4(m), failure to achieve service within ninety (90) days after filing of the Complaint may result in dismissal of this case.   If Plaintiff is financially unable to arrange for service of process, he may submit a motion to the Court in which he (1) explains to the Court what efforts he made to perfect service and (2) includes an affidavit in support of his claim of indigence, along with a certified copy of his trust fund account statement (or institutional equivalent) for the previous six-month period.

**DUTY TO ADVISE OF ADDRESS CHANGE**

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

**DUTY TO PROSECUTE ACTION**

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendant is similarly advised that she is expected to diligently defend all allegations made against her and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

**FILING AND SERVICE OF MOTIONS,
PLEADINGS, AND CORRESPONDENCE**

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence

14

filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.   The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.   **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.   This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or

that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.   The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 28th day of January, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

16